May it please the court, Catherine Essington on behalf of the defendant, Mr. Rodriguez. I'd like to reserve three minutes for rebuttal, please. This court should order a new trial in Mr. Rodriguez's case because of the trial judge's erroneous handling of the jury's request to have audio and video exhibits submitted by the government replayed during their deliberations. The trial judge here erred in several ways. First, by allowing the alternate jurors not only to be present in the courtroom during the replaying of these exhibits, but also to sit in the jury box with the regular jurors, thereby increasing the chances of improper communication. In addition, he did not instruct the alternates or the jurors to refrain from reacting to these exhibits when they were being replayed. He also erred in allowing the jury to confer or discuss what portions and the audio and video exhibits themselves that they wanted to see in the open courtroom in the presence of the parties, spectators, the trial judge, and the alternates. This flawed procedure for handling the replaying of these exhibits exposed the jury to outside influences during their deliberation and likely had a chilling effect on the deliberations. The procedure violated Mr. Rodriguez's Sixth Amendment right to a fair trial and an impartial jury. And it violated the cardinal principle that jury deliberations are to be conducted in secret. While this is not structural error, and we have a Alano case as the main case on this point, Alano does say that under certain circumstances prejudice may be presumed. Certainly it is very difficult, if not impossible, for a defendant ever to show that open courtroom discussion or an open courtroom presentation had a chilling effect on jurors. A chilling effect would necessarily involve a hesitation of jurors to speak frankly. And I'm not sure that that would ever be apparent on the record, on the transcript. The government contends that these discussions among the jury did not rise to the level of deliberations. However, the court reporter did not transcribe exactly what was said. We do know that the jury conferred or caucused several times at the judge's request concerning the audio and video exhibits. That defense counsel felt uncomfortable enough to approach the judge and indicate that he felt that this With respect to that particular point in the proceedings, there's agreement from both sides that that is not preserved? That is not a preserved objection? Am I right about that? I would agree. He did bring it to the court's attention, but not until after the conferring discussion had already taken place. And there were no more of these in-court conferences after he did bring it to the trial judge's attention. So I would agree that under those circumstances, it's not preserved. Okay. So I know that you just said that in that sort of situation, it may be extremely difficult, if not impossible, to show prejudice. So perhaps it should be presumed. But taking a look at the facts here, you do have the district court judge making suggestions to the jury in terms of, for example, I'm paraphrasing here, I should send you back to decide what you want to listen to or look at, but let's see if you can decide that right now. What kind of an impact do you think a statement like that by the judge might have on an individual juror? I mean, if I were to ask you to make an argument, to make a showing of prejudice, can you do that? I think that, again, the prejudice is mostly in the chilling effect of having the jurors discuss the evidence in the case in the open courtroom. And, again, there's also this other issue about whether the alternates were part of that discussion or had reactions. Let me ask you this question because it's something I was thinking about. What if one of the jurors, listening to the judge say that, was thinking, actually, I want to see the entire thing, but we're only given a second to decide this and maybe I better not speak up, I've got the judge here, I've got all these lawyers here, is that a realistic possibility of intimidation, influence, and then in the end chilling? I think it is. I think that's an excellent point. I think there was a strong suggestion by the trial judge that they should, because the videos were quite lengthy, that they should only be specifying certain portion that they wanted to see rather than seeing the whole thing. So I think your concern is a very valid one, that they may have wanted to see more and felt inhibited to say that. Now, do you have to make any showing that something like that, to the extent it's a realistic concern, could have affected the ultimate verdict? Or is the showing of prejudice short of that? I'm not exactly sure what the word chilling means in this context. Well, I think it's also, in addition to the difficulty in showing a chilling effect from the cold record, I think that the difficulty for Mr. Rodriguez is also going to be showing that that impacted later discussions in the jury room, without probing, the prohibition of probing into those discussions. So I think that the prejudicial showing is something short of that. It's that it likely influenced them, that it likely had a chilling effect. And I think this case is distinguishable from the Jadlow case, which I cited as a supplemental authority, although I think it's somewhat analogous. Here, Mr. Rodriguez has met the threshold requirement that the defendant in Jadlow did not meet, which is that he showed that there were actually discussions, not just that the judge told the jury to confer, but that these discussions actually took place in the open courtroom. Let me understand the standard of review you're advocating here. If we have no preserved objection and we have no demonstration of actual prejudice, but we reverse simply based on the presumption of prejudice under the standard of review, how is that different than saying it's structural error, which I thought we were saying it wasn't? Well, I think Alano and Jadlow talked about how it's not structural error, and I guess the difference would be sort of a factual one. In structural error, it's sort of an automatic reversal. In a presumption case, it would really depend much more on the specific facts in here. Right. But if we've got nothing in the specific facts that you can point to to show prejudice and we rely only on the presumption, then the presumption is going to be present in every case. And if the presumption alone in the absence of any actual prejudice is enough to reverse, then it seems to me it would follow reverse would be automatic in every case. I don't think the presumption of prejudice is going to be apparent in every case, and I disagree that there's no showing of prejudice in this case. Again, I think the fact that these discussions took place in the open courtroom with the alternates in very close proximity to the regular jurors and that we know these discussions took place is a showing of prejudice itself. Was there anything in the portion of the tape that was not shown that was exculpatory? Not that I'm aware of, Your Honor, but again, I think we don't, you know, obviously we're not privy to what happened in the jury room afterwards, and there may have been portions that the jury wanted to see. There may have been, I guess, a more frank discussion about the substance had they not been in the open courtroom. Do we know from the record how the jurors were seated? Were the alternates at that point still interspersed with the other jurors or were they on the end together? Well, the court, the trial judge instructed them to take their regular seats, so I'm assuming that they were interspersed. That was at one point, and another point after they went back to the jury room and they came out again, the alternates were seated at the defendant's table. So there were sort of two different points, and initially they were interspersed and then later they were seated at counsel's table. While they were seated with the other jurors, was that when the jurors discussed among themselves what else to see or were they by that point at the table? It's not entirely clear from the record, I think, but for the most part it appears that when the substantive discussions were going on that they were at counsel's table. But it's not clear to me that there weren't also some discussions when they were interspersed. And certainly Alano talks about the danger of influence of regular jurors by body language and sort of maybe nonverbal reactions of alternates and that alternates can participate through body language. That's an important aspect. Again, I would highlight that no contemporary instructions were given to the alternates or the regular jurors before these procedures were employed, and that's really a big part of the Alano decision, and I would say also this Court's decision in Montserrat-Valentin that the courts found that those cases it was not reversible error largely because contemporaneous instructions were given very carefully for alternates not to participate or in the case of Montserrat for the technician who came into the jury room to replay an exhibit to refrain from discussion with the jurors. Thank you. Good morning, Your Honors, and may it please the Court. Kelly Lawrence for the United States. I'd like to just address a couple of factual questions that just came up at the end of counsel's argument. The record shows that when the alternates were originally brought in to hear the audio recordings, which were the shorter recordings, they sat in the jury box in their original seats with the regular jurors. The record does not suggest there was any conversation by the jury or the alternates or anyone at that time. The recordings were simply played without discussion, and then the Court talked to the jury about whether they wanted to hear the video recordings, which portions they wanted to see. When you say the record does not reflect conversations on jurors, I've never seen a trial where the court reporter would even purport to transcribe conversations going on between the jurors in the juror box. Indeed, the court reporter can't even hear them. The fact that the court reporter couldn't hear them would actually add to our argument that there's no showing of prejudice in this case. If there were any conversations that could not be heard, then by extension, there was no participation or infringement on the jury's secrecy of deliberations. But I would also point out here that we're putting great emphasis on a parenthetical in the transcript, which indicates in two places toward the end of the procedure that the jury conferred. And so I think we need to look at the transcript as a whole. If there's a point where the court reporter thought that the discussion was occurring and noted it, then the absence of any notation would suggest that there is no discussion. Well, I mean, the court reporter is distinguishing between a confab of the jury to give the judge a unified answer and the type of little discussions that could go on among jurors that court reporters – I've never seen a court reporter write any of those down. So I guess I'm challenging the proposition that we can assume one way or the other that there were conversations, which then brings us back to how the presumption works. Well, two points in response to that. First, not every comment between jurors is deliberation in the first instance. And so if the court reporter isn't transcribing a, excuse me, can you move my water bottle closer, that wouldn't be deliberation and there would be no concern about that kind of comment. And to the extent that the court reporter noted that the jury conferred when the parties, the judge and the government and the jury, were trying to identify which starting and stopping place on the video they wanted to have, they noted the jury conferred. So again, I just suggest that from a whole reading of the record, there's a distinction between perhaps innocuous comments and whatever conversation the jury had later. But turning to the presumption, Alano made quite clear in this similar context where an alternates, the alternates were in the jury room with the deliberating jurors, that not only does the defendant have to show that that was a plain error, which the court said it was under the previous Rule 24, which said that the alternates had to be dismissed at the end of the jury, but also that he has to show prejudice. And that prejudice must be a specific showing. It's not simply a presumption. Alano made quite clear that there may be cases where you would presume prejudice, but that was not one of them. And respectfully, if the alternates' presence in the jury room with deliberating jurors does not rise to the level of presumption of prejudice, then the alternates' mere presence in a courtroom with others, the judge, the parties, the defendants around, would certainly not warrant the presumption. And other courts that have looked at this have really only presumed prejudice in a case where there was an actual showing that the jurors and alternates deliberated together. I have not found a case, and the defendant doesn't cite one, where there's a presumption applied when the record is silent as to whether the alternates actually participated in the discussion. Given that standard, the defendant can't make a showing of plain error here. There's no presumption to be applied, and this record does not permit a finding that even if the alternates' presence had some kind of chilling effect, which the record does not show, that that had any outcome on the verdict. As the government noted, as we noted in our brief, the evidence in this case was overwhelming. There were tapes, to be sure, of each of the three controlled buys. Not only that, we had a testimony of the cooperating witness who was present at each of those controlled buys, as well as several police officers who surveilled those buys, and although not all of them identified the defendant, one of them did, and they also had corroborating evidence of the defendant's presence at his house, his coming in and going out, the fact that he was driving the same car for two of the transactions, and for the third, the car was parked in front of his house. They had descriptions of his clothing. They had descriptions of where he was, where he was going, and they had the drugs that the cooperator purchased from the defendant. Are you saying that that's the showing that has to be made with respect to prejudice? I believe Alana made clear that not only would you have to show prejudice from the alternate's presence with the deliberating jurors, but there also has to be a showing that it affected the outcome of the trial. The first part of the Alana opinion sets forth a standard for plain error review by appellate courts, which we are all familiar with. Excuse me. So if a marshal entered the jury room and started deliberating with the jurors, the fact that the evidence was overwhelming would overcome that sort of influence? That would be a case-by-case basis, I believe. It might show that there was prejudice from the deliberation, but it may not show that it affected the defendant's substantial rights in the sense that there was. Do we have a case that says that's the standard? I mean, maybe we don't need one if that's what Alana says. That is what Alana says, and I have not seen a case here in this circuit where we have the same kind of situation with the alternate's presence. I mean, we have JADLOW, which is an instructional case as opposed to an alternate's deliberating with the jury case, but it is instructive and it does emphasize that there has to be a specific showing, and there still is the fourth bound. JADLOW doesn't say that it has to be a showing that the result in the jury verdict would have been different? No, but JADLOW requires a specific showing of prejudice such that it would affect the defendant's substantial rights. And I'm trying to understand what prejudice means. So I don't have to spend any time trying to figure out what chilling means because we have to go to the end result anyway? The end result, I believe, is relevant to that analysis of whether it affected the defendant's substantial rights. I think this is a unique situation where the prejudice is more evident than it sometimes is in other plain error cases. So there's a specific prejudice that the cases discuss, including Olano. JADLOW was slightly different, but it also involved an issue of whether the jury's deliberations were violated there. It was because of whether they might have engaged in premature deliberations. And this court was very careful to say, we're not sure, we don't have a record, but the record as it is shows no evidence that the jurors did, despite the judge's instruction that they could discuss significant pieces of evidence, there was no evidence that they had, and therefore, the defendant couldn't make that specific showing. There wasn't a further discussion of whether... This case is different. We have a judge telling the jury to confer. And frankly, I'm not as concerned about the alternate jurors on the facts of this case as I am about the judge, the prosecutor, and defense counsel there. It seems to me that there's perhaps even more than subtle influence or intimidation that could take place with respect to one or more jurors. Unless we're going to say that the conferring among the jurors at that point to decide or to respond to the question, what is it that you want to see, unless we're going to say that's not deliberation, why wouldn't just the atmospherics here constitute an influence on the deliberations? The government's position is, in fact, that that wasn't deliberation. The jury didn't deliberate by indicating which portions of the video it wanted to see. And here we have a record that suggests... How can that be true? I don't understand that. There's no substantive discussion about the video. It's simply which minute and seconds on the tape would you like to start and stop. There's no discussion when the jury says we want to start here. They don't say, for example, we want to start at the place where the defendant got into the car to buy the drugs. They just say we want to see the transaction. We want to see this starting point of the video, this stopping point of the video. One has to, in answering that question, one has to decide that one thinks that that might be important and that something else might not be important. I don't see how that is not itself deliberation. Those are decisions that are typically made in the jury room. But that would be... It's a similar situation to where a jury asks to view guns, for example, which are often not sent back to the jury room, or drugs. And so the mere asking of the question and saying we want to see this gun, say there were five, or this baggie of heroin, reveals something of what the jury thinks is important. But it doesn't reveal what they're thinking about in terms of its influence or impact on the verdict. There just has to be a line where asking the question is permissible. But the decision whether to ask to see the gun isn't made in the presence of the judge, prosecutor, and defense counsel. But if the jury were brought into the courtroom to look at a gun and said, can we see that one too, I respectfully submit that wouldn't be evidence of deliberation on the part of the jury to ask to review certain pieces of evidence that were already admitted. And it is very clear, although even if there's some ambiguity about what the jury conferred, what that parenthetical means, they didn't discuss their thought processes. They were looking to view the videotapes, and it was confusing as to where they should start and stop. And that was what the discussion was about, in addition to some malfunctioning jurors or monitor equipment as it went along the way. And the judge was trying to be very careful about... He wanted to send them back to the jury room. The jury said, we want to see excerpts. So he said, okay, let's try it. So then what do we make of defense counsel expressing discomfort and then the judge saying, I agree? That happened at the very end of this process. And I would note too, I think the judge in the sidebars with counsel was starting to express some frustration with the technical difficulties, with the inability to find exactly where the starting point was. There was a little bit of pent-up frustration with the process. But the judge's expression of discomfort came immediately, correct me if I'm wrong, in response to defense counsel saying, I feel like we're part of the deliberations here. The judge did say that, and I note that immediately following that, defense counsel and the judge said, we're going to get a different system for tomorrow, which is what occurred. The government brought in a clean laptop. But even then, defense counsel said, well, judge, maybe we should play the other videos before we break for the day. And the judge said, okay, let's do that. So even if they thought there was something that was bothering them about this, and they were all there to witness it, so in some sense ‑‑ Well, there wasn't even an objection. So how far does that get you? Well, there wasn't an objection until the very end. And even at that point, defense counsel said, let's play the other tapes. So if the defense counsel thought that there was something really untoward happening or there had been substantive deliberation and that there was some conversation that had occurred that was improper, he would have had to raise that objection there and articulate it to the district court, which he did not do. So on this basis, on this record, there's just no evidence that an actual showing of prejudice has been made. And ‑‑ excuse me, Judge Kayada. I'm confused because your argument on deliberation, I'm having trouble following that. It seems to me when a juror asks that they want to see piece of evidence A instead of piece of evidence B, they're clearly engaged in the deliberative process. Indeed, they may, in a Socratic-like manner, be attempting to convince their colleagues one thing or the other. So if we assume that this was, as everyone in the courtroom seemed to regard it, deliberation, is that enough prejudice? No, it is not. There's no showing, even if we say that it's deliberation, because they told the court where to start and stop. And respectfully, though, if they had given the judge a list before they came into the courtroom, it's really no different than saying it out loud, I would submit. But even if we say that that is deliberation, there still has to be a showing that the jury felt chilled by the presence of others, and that would include the judge and the court reporter who was there and the parties, and also that they ‑‑ or that they actually, those other persons actually participated in the deliberation. And there's no evidence of that, that there was any attempt to influence the jury in any way, nor that the jury felt influenced by it. And, again, I go back to the situation where if we would find prejudice on this record, you would have to find prejudice in almost any situation where the jury's in the courtroom reviewing evidence with other persons around. If there's no showing that the other person's engaged in discussions with the jury that would rise to the level of deliberation, then their mere presence can't just be chilling just because it is. The cases don't suggest that. How far do you take that? I mean, can we put the jury in a glass box where they can't hear the people outside, but they know they're being watched and listened to? No, I think it's a practical, we need to take a practical approach. And what I'm suggesting is it is a well‑accepted procedure to bring a jury back into the courtroom to review evidence. Sometimes it can be particularly sensitive evidence in a child pornography case that they don't want to send to the jury room. It might be a gun. It might be drugs. It might be any sort of thing. That's a well‑accepted procedure, and there are people in the courtroom when the jury views the evidence. That is not held to have a chilling effect on the jury's deliberation. But here you have something else. You have the judge saying, tell me what you want to look at, and putting a time limit on the time for which the jury can make that decision. You have both of those things happening. And they have to do it in front of the judge and the prosecutor and defense counsel. And they apparently didn't fully agree. They weren't just reading a list. There was some confusion among them, and someone chips in and someone doesn't. I disagree with the suggestion that the judge gave them a time limit. The judge said, I'm going to send you back, and you can decide what to do. And the jury, this is on page 526 of the government's appendix. The court says, I think that's all I'm going to need you to do is caucus and find out whether you'd like the entire excerpts. And previously he said he was going to send them out of the room. The next line says, a juror says, excerpts. I would suggest there's no pause or time limit there. The court didn't say, you have to have it get to me right now. I want you to tell me here. He had previously said he would send them from the room. Yeah, I may not be remembering correctly. I'll go back and check. I thought that the thrust of it was, if you know right now, let me know. Otherwise, I'm going to send you back. But I may have read too much into that. I think it was, I'm going to send you back. And before he did, the jury seemed to offer its own answer, which he did accept. But the government respectfully submits that the defendant has not made the specific showing of prejudice required for reversal here. Thank you. Thank you. Just a few points. The government is assuming, without record support, that these discussions did not involve a substantive discussion of the evidence. But I think, as several of you have pointed out, it's almost impossible to imagine a scenario where they're deciding what they want to see without having some substantive discussion about the evidence itself, which I think makes this clear that it's actual deliberations. Again, bringing the jury into the courtroom to review evidence, which is a fairly common practice, is substantially different from what occurred in this case, as Judge Howard pointed out. I haven't seen any other cases where the jury is actually conferring or deliberating in the open courtroom in the presence of all the parties. And Alano speaks to the issue of alternates but does not speak to this issue. I disagree with the government's characterization that the evidence is overwhelming. And I did, in this case, I did point out some parts in my brief where I disagreed with that, showing that the defendant was not positively identified in all the instances. There was testimony that he resembled, you know, the person they saw resembled the defendant. Again, particularly with respect to the first and third transactions. With respect to the instructional issue, I would rest on my brief in that case. Thank you.